394 A.2d 1293

COMMONWEALTH of Pennsylvania

v.

Reginald MIDDLETON, Appellant.

Superior Court of Pennsylvania.

Submitted Dec. 6, 1977.

Decided Dec. 7, 1978.

Lee Mandell, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, and F. Emmett Fitzpatrick, District Attorney, Philadelphia, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

Appeal is taken from judgments of sentence rendered following a jury trial and verdicts of guilty of robbery and criminal conspiracy. "Crimes Code", Act of 1972, Dec. 6, P.L. 1482, 18 Pa.C.S. §§ 3701 and 903. This trial commenced on December 16, 1976, after a mistrial had been granted in the case due to a deadlocked jury. Post-trial motions were made and denied.

Concisely stated, these are the facts. In the evening of October 18, 1975, defendant entered a bar in North Philadelphia and ordered a quart bottle of beer, for which he paid. Then he ordered port wine and again paid. Shortly thereafter he informed the bartender that "this is a stickup," pointing at him what appeared to be a shotgun, at trial identified as an inoperable air, or "BB" gun. The defendant ordered everyone to enter the rest rooms located at the rear of the bar room, and the four or five customers, bartender, and one other employee, did so. The bartender noticed, as he was leaving the room, that someone was with appellant Middleton. A few minutes later all emerged to find the bar vacant except for one customer, named Cash, who had all the while refused to move from his bar stool. However, the cash had been removed from the cash registers. The police were called.

The bartender testified that he did not see defendant again until several weeks later (November 13th) when he appeared in the bar, stated "this is a holdup", and ordered everyone to the rest room. Again defendant was in the company of another, but on this second occasion, while the

intruders were asking for the money, the police entered and cut short their criminal activity.

At the beginning of trial, the defense requested reconsideration of a pre-trial suppression of identification question which had been presented to the court in the prior trial, which had resulted in mistrial. In that first trial, the matter was disposed of adversely to the defendant. The court below in the case now on appeal refused reconsideration. Appellant argues that this was error. We do not agree. *Pa.R.Crim.P.* Rule 323 sets the procedure applicable to suppression issues. Section "j" states: "If the court determines that the evidence is admissible, such determination shall be final, conclusive and binding at trial, except upon a showing of evidence which was theretofore unavailable, but nothing herein shall prevent a defendant from opposing such evidence at trial upon any ground except its admissibility." The "comment" to the Rule in effect at the time of trial of this case read: "The rule is designed to provide one single procedure for the suppression of evidence alleged to have been obtained in violation of the defendant's constitutional rights." The intent of our Supreme Court to have suppression questions determined at one time regardless of whether a new trial is held on the merits of the case, is made evident by the *Pa.R.Crim.P.* as well as *Commonwealth v. Harmon,* 469 Pa. 490, 366 A.2d 895 (1976). While *Harmon* arose in the context of an appeal from the Philadelphia Municipal Court of Common Pleas, for trial de novo, the Supreme Court points out that "[p]re-trial proceedings by definition are distinguishable from the actual trial." 469 Pa. at 494, 366 A.2d at 897.[1] "Trial" by definition normally does not include pre-trial motions.[2] In the instant case we find that the lower court properly relied upon *Harmon* for guidance in its ruling that appellant had one opportunity to

1. We note that *Harmon* effectively reverses our holding in *Commonwealth v. White,* 228 Pa.Super. 23, 324 A.2d 469 (1974).

2. For the purposes of *Pa.R.Crim.P.* 1100 trial may include pre-trial motions. See Comment to Rule 1100.

pursue his suppression claim.[3] There is no error in denying reconsideration of the issue.

 In the Commonwealth's case, references were made by witnesses to the November 13 robbery, the method of which was identical to the October robbery. Trials on the two offenses were held separately, with conviction as to the November robbery coming first, due to the rescheduling necessitated by the mis-trial on the October case. Our study of trial testimony convinces us that the purpose of these references was to identify appellant as the perpetrator, which identification in the instant case was reinforced by the bartender's having seen him several weeks later in the second robbery, and to show the thread of common scheme between the two crimes. *Commonwealth v. Patterson*, 247 Pa.Super. 199, 372 A.2d 7 (1977), points out that it is proper to introduce as evidence the fact of another crime for these limited purposes. There was no error below in allowing the testimony.

 Appellant's next argument—that the evidence did not support the criminal conspiracy conviction—is without merit. Argument is made that the Commonwealth witnesses' testimony as to the participation of a conspirator in the October robbery was speculative. However, the testimony of the bartender is without equivocation that when he was headed to the rest room with the other patrons, he turned and saw the man who was with appellant jump over the bar. While the witness had not seen this companion enter the barroom with appellant, the unequivocal testimony that someone was acting in concert with Middleton to commit the crime is sufficient to support the conviction for conspiracy. Likewise, a customer in the bar testified that he saw appellant's "partner"—as he referred to him, and was ushered into the bathroom by him. The conduct and overt acts of the co-conspirators are clearly shown and are sufficient to support conviction. *Commonwealth v. Henderson*, 249 Pa. Super. 472, 378 A.2d 393 (1977).

3. The case of *Commonwealth v. Oakes*, 481 Pa. 343, 392 A.2d 1324 (1978) concerns post-trial motions which involve different principles than pre-trial motions and is therefore not apposite.

■ Next appellant argues that he was prejudiced by the presence during trial upon the district attorney's table of a white bag of a type normally associated with the carrying of money, which bag inferentially contained the money from the robbery, but was not introduced as evidence. The Commonwealth attorney disputed that the jury ever saw the bag. At the close of trial, before the jury returned its verdict, a hearing was held on the question of whether the jury saw this bag. This hearing was conducted before the trial judge alone, and two court officers who had been present during the entire trial were questioned under oath. One stated that on the prior Thursday, at and after jury selection and into the beginning of trial, the bag was on the floor out of the jurors' view. The only time it appeared on the top of the table was when it was first brought into the room by the police; but by the time the jurors took their places, the bag was out of sight. This testimony was corroborated by the court reporter, who also knew that the bag was out of sight of the jurors in the courtroom. Appellant offers no contradictory testimony. The argument is without merit.

■ Next appellant argues that the two instances of the Commonwealth's attorney's referring, during his closing argument, to appellant as "Alonzo" Middleton, instead of Reginald, constitute reversible error. Apparently the inadvertence stemmed from the name "Alonzo" being an alias of appellant and the name under which he was indicted for the November 13th robbery. In our review of the testimony, we are convinced that the Commonwealth attorney misspoke himself without any intention to prejudice appellant. Appellant claims that when the jurors heard the name "Alonzo" they would associate him with the November 13th crime. The name of Alonzo Middleton was not mentioned in any of the testimony about the November 13th crime, hence there was no way in which the jury could connect the appellant with that other crime because the Attorney for the Commonwealth referred to the appellant as Alonzo Middleton. Furthermore the jury already knew of appellant's participa-

tion in the November crime when testimony about it was properly introduced to prove appellant's identity. This is not reversible error.

 Lastly, appellant challenges certain parts of the lower court's jury charge. The court discussed the Commonwealth's burden of proving guilt beyond a reasonable doubt, and defined reasonable doubt as doubt which "would *restrain* a reasonable person from acting", "an honest doubt arising out of the evidence itself." If a reasonable doubt exists, then "the jury should find him not guilty. . . ." Appellant argues that the court incorrectly used the word "restrain", and should have used instead the word "hesitate", as he asked in his points for charge. He argues that to use "restrain" is to change the principle that the jury must have no reasonable doubt in order to convict into a concept that it must have an absolute belief in innocence in order to acquit. This argument is a non sequitur and is totally meritless. Furthermore, appellant challenges the court's instruction on criminal conspiracy insofar as "overt act" is concerned. The court said to the jury that "the conspiracy must go beyond the mere talking stage"; "there must be some action." "Saying it was a holdup", "pointing a rifle or shotgun facsimile", "herding the people into the washroom", and "taking the money" were all called overt acts. The error alleged is lack of definition of "overt act." There is no foundation for this argument as the court's definitions were adequate. Read as a whole, the charge does not contain error.

Affirmed.

SPAETH, J., files a concurring opinion.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, concurring:

I concur in the result reached by the majority. On the question whether appellant was entitled to a second suppres-

sion hearing, I agree with the majority that he was not, but wish to note that this holding should not be read to foreclose a second suppression hearing where the defendant alleges *new* facts which would make the evidence inadmissible. *See Commonwealth v. DeMichel,* 442 Pa. 553, 277 A.2d 159 (1971); Pa.R.Crim.P. 323(j); *cf. Commonwealth v. Oakes,* 481 Pa. 343, 392 A.2d 1324 (1978).